NO. 16-14800-CC

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

v.

AARON M. RICHARDSON,

DEFENDANT-APPELLANT.

---

**Appeal From the United States District Court
for the Middle District of Florida**

---

BRIEF OF APPELLANT AARON M. RICHARDSON

---

JOHN J. OSSICK, JR., P.C.

JOHN J. OSSICK, JR.
POST OFFICE BOX 1087
KINGSLAND, GEORGIA 31548
PHONE: (912) 729-5864
FAX: (912) 729-2230

ALSTON & BIRD LLP

MEREDITH JONES KINGSLEY, ESQ.
1201 WEST PEACHTREE STREET
ATLANTA, GEORGIA 30309-3424
PHONE: (404) 881-7000
FAX: (404) 881-7777

**CJA Appointed Counsel for Appellant**

**January 17, 2017**

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant Aaron M. Richardson hereby identifies the judges, attorneys, and persons that have an interest in the outcome of this case:

1.  Alston & Bird LLP - Law firm representing Appellant

2.  Bentley, A. Lee, III, United States Attorney, M.D. Fla.

3.  Coogler, L. Scott - United States District Court Judge, N.D. Ala.

4.  Corrigan, Timothy J. - Victim and United States District Court Judge, M.D. Fla.

5.  Devereaux, Mark - Assistant United States Attorney, M.D. Fla.

6.  Graham, James E. - United States Magistrate Judge, S.D. Ga.

7.  Heavener, III, Mac D. - Assistant United States Attorney, M.D. Fla.

8.  John J. Ossick, Jr., P.C. - Law firm presenting Appellant

9.  Kingsley, Meredith Jones - Appointed Counsel for Appellant

10.  Ossick, Jr., John J. - Appointed Counsel for Appellant

11.  Richardson, Aaron M. - Appellant, Incarcerated

12.  Rhodes, David P. - Assistant United States Attorney, Chief, Appellate Division, M.D. Fla.

13.  Sokol, Amy - Senior United States Probation Officer, N.D. Ala.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

This 17th day of January, 2017.

John J. Ossick, Jr.
Georgia Bar Number 555150
JOHN J. OSSICK, JR., P.C.
Post Office Box 1087
Kingsland, Georgia 31548
Telephone:  912-729-5864
Facsimile:  912-729-2230
E-mail: ossick@tds.net

Meredith Jones Kingsley
Georgia Bar Number 793726
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: 404-881-4793
Facsimile: 404-253-8463
E-mail: meredith.kingsley@alston.com

***Counsel for Appellant Aaron M. Richardson***

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Aaron M. Richardson respectfully requests oral argument. This appeal is not frivolous, the dispositive issues have not been authoritatively decided, and the facts and the decisional process would be aided by oral argument. *See* Fed. R. App. P. 34(a).

## **TABLE OF CONTENTS**

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS ........................... 1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

STATEMENT OF JURISDICTION ........................................................... viii

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE CASE ...................................................................... 2

I.      Course of Proceedings and Dispositions Below ............................. 2

II.     Statement of Facts ........................................................................ 7

III.    Statement of the Standard or Scope of Review ............................. 9

SUMMARY OF THE ARGUMENT .......................................................... 11

ARGUMENT & CITATION OF AUTHORITY .......................................... 13

I.      The District Court Erred by Denying Mr. Richardson's Motion to
        Suppress Statements He Made at the JSO ................................... 13

        A.      Mr. Richardson Did Not Waive His Rights Against Self-
                Incrimination and to the Presence of a Lawyer During the
                Interrogation at the JSO ................................................... 13

        B.      Mr. Richardson Could Not Have Voluntarily, Knowingly, and
                Intelligently Waived His Rights ......................................... 16

II.     The District Court Erred by Denying Mr. Richardson's Motion to
        Suppress Cell-Site Location Information That Was Obtained Without
        a Showing of Probable Cause ...................................................... 21

III.    The District Court Erred In Applying a Sentencing Enhancement for
        Obstruction of Justice ................................................................. 23

        A.      The False Statements Charged Are Conduct Ordinarily Not
                Covered by § 3C1.1 and Should Not Have Been Covered Here ........ 23

B.    The False Statements Charged Are Not Covered Conduct Under § 3C1.1 Because They Were Not Tied to the "Instant Charge of Conviction" ........................................................ 27

IV.    The District Court Erred By Denying Mr. Richardson's Rule 29 Motion for Judgment of Acquittal as to Counts 10 and 21 ........................... 29

A.    Mr. Richardson's Statements That Formed the Basis of Count 10 Were Speculative Answers to Hypothetical Questions Posed to Him and Therefore Could Not Have Been False Statements ......... 30

i.    Mr. Richardson's Hypothetical Statements Are Not False ...... 32

ii.    Mr. Richardson's Statements Were Not Material Because the Agents Did Not Believe Him and, Alternatively, They Were Hypothetical ........................................................ 33

B.    The Report Mr. Richardson Submitted to the Probation Office for December 2012 Was Accurate When He Signed It Attesting to its Truth and Therefore Is Not a False Statement ........................... 36

i.    The Government Did Not Rebut the Truth of Mr. Richardson's December 30 Signature and Certification .......... 37

ii.    The Government Did Not Present Sufficient Evidence That the Statement was False When Submitted ...................... 39

CONCLUSION ........................................................................ 41

CERTIFICATE OF COMPLIANCE ................................................... 42

CERTIFICATE OF SERVICE ........................................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amoroso v. Sw. Drilling Multi-Rig P'ship No. 1,*
   646 F. Supp. 141 (N.D. Cal. 1986) ........................................................................38

*Bonner v. City of Prichard, Ala.,*
   661 F.2d 1206 (11th Cir. 1981) (holding that Fifth Circuit decisions made on
   or before September 30, 1981, are binding precedent in the Eleventh Circuit)......................15

*Bronston v. United States,*
   409 U.S. 352 (1973) ..........................................................................................32

*Groh v. Ramirez,*
   540 U.S. 551 (2004) ..........................................................................................22

*Hart v. Att'y Gen. of the State of Fla.,*
   323 F.3d 884 (11th Cir. 2003) ..........................................................................20

*In re Application for Tel. Info. Needed for a Criminal Investigation,*
   119 F. Supp. 3d 1011, 1024-26 (N.D. Cal. 2015)................................................22

*In re Application of United States for an Order Authorizing Release of Historical
Cell–Site Info.,*
   809 F. Supp. 2d 113 (E.D.N.Y. 2011) ................................................................22

*Kirkman v. Pittman,*
   111 So. 2d 583 (Ala. 1959) ..............................................................................38

*Miller v. Dugger,*
   838 F.2d 1530 (11th Cir. 1988) ..................................................................17, 18

*Miranda v. Arizona,*
   384 U.S. 436 (1966)............................................................................... passim

*Moran v. Burbine,*
   475 U.S. 412 (1986).....................................................................................16, 20

*N.C. v. Butler,*
   441 U.S. 369 (1979).....................................................................................13, 14

*Rauso v. Sutton,*
   No. 99-cv-2817, 2004 WL 1207640 (E.D. Pa. Mar. 30, 2004) .............................38

*United States v. Alpert,*
  28 F.3d 1104 (11th Cir. 1994) (en banc) ....................................................24

*United States v. Baker,*
  626 F.2d 512 (5th Cir. 1980) ....................................................................35

*United States v. Barbour,*
  70 F.3d 580 (11th Cir. 1995) ....................................................................20

*United States v. Bernal-Benitez,*
  594 F.3d 1303 (11th Cir. 2010) ................................................................15

*United States v. Bing,*
  No. 308-CR-281-J-32MCR, 2009 WL 179531 (M.D. Fla. Jan. 23, 2009)................18, 19

*United States v. Calhoon,*
  97 F.3d 518 (11th Cir.1996) .....................................................................37

*United States v. Carey,*
  152 F. Supp. 2d 415 (S.D.N.Y. 2001).......................................................33

*United States v. Davis,*
  785 F.3d 498 (11th Cir. 2015) ..................................................................22

*United States v. Doe,*
  661 F.3d 550 (11th Cir. 2011) ..................................................................10

*United States v. Duncan,*
  166 F. App'x 464 (11th Cir. 2006) ...........................................................32

*United States v. Farley,*
  607 F.3d 1294 (11th Cir. 2010) ..................................................................9

*United States v. Gafyczk,*
  847 F.2d 685 (11th Cir. 1988) ..................................................................35

*United States v. Gannaway,*
  477 F. App'x 618 (11th Cir. 2012) ...........................................................37

*United States v. Gianni,*
  678 F.2d 956 (11th Cir. 1982) ..................................................................33

*United States v. Gonzalez,*
  834 F.3d 1206 (11th Cir. 2016) ................................................................10

*United States v. Graham,*
  796 F.3d 332 (4th Cir. 2015) ....................................................................22

*United States v. Hernandez,*
    574 F.2d 1362 (5th Cir. 1978) ................................................................15

*United States v. House,*
    684 F.3d 1173 (11th Cir. 2012) ............................................................35

*United States v. Lange,*
    528 F.2d 1280 (5th Cir. 1976) ..............................................................37

*United States v. Manapat,*
    928 F.2d 1097 (11th Cir. 1991) ............................................................32

*United States v. McCarrick,*
    294 F.3d 1286 (11th Cir. 2002) ............................................................30

*United States v. McGuinness,*
    451 F.3d 1302 (11th Cir. 2006) ............................................................25

*United States v. Micieli,*
    594 F.2d 102 (5th Cir. 1979) ................................................................20

*United States v. Neder,*
    197 F.3d 1122 (11th Cir. 1999) ............................................................33

*United States v. Richardson,*
    3:08-cr-302-LSC-JEG (M.D. Fla.) .................................................. passim

*United States v. Sanford-Brown, Ltd.,*
    788 F.3d 696 (7th Cir. 2015) ................................................................38

*United States v. Stevenson,*
    No. 1:11-CR-350-ODE-RGV, 2012 WL 1418635 (N.D. Ga. Apr. 23, 2012) ........................18

*United States v. Street,*
    472 F.3d 1298 (11th Cir. 2006) ......................................................9, 20

*United States v. Uscinski,*
    369 F.3d 1243 (11th Cir. 2004) ......................................................24, 27

*Withrow v. Williams,*
    507 U.S. 680 (1993) ..............................................................................16

**RULES**

Fed. R. App. P. 34(a) ................................................................................ i

Rule 16 ..................................................................................................4

Rule 29 ....................................................................................... passim

**STATUTES**

18 U.S.C. § 1001 ........................................................................................... passim

18 U.S.C. § 3551 ....................................................................................................6

18 U.S.C. § 3553 ....................................................................................................6

18 U.S.C. § 3742 ................................................................................................... ix

28 U.S.C. §1291 .................................................................................................... ix

28 U.S.C. § 1345 ................................................................................................... ix

Stored Communications Act, 18 U.S.C. § 2703(c) ...........................................21

Stored Communications Act, 18 U.S.C. § 2703(d) ........................................4, 21

U.S.S.G. § 3C1.1 ........................................................................................... passim

U.S.S.G. § 3C1.1, cmt. n.4(G), n.5(B) ..............................................................24

U.S.S.G. § 3C1.1, cmt. n.5(B) ...........................................................................23

U.S.S.G § 3C1.1, cmt. n.6 ..................................................................................24

U.S.S.G. § 3C1.1 n.4(G) ....................................................................................27

**OTHER AUTHORITIES**

U.S. Const. amend. IV ..................................................................................... passim

## **STATEMENT OF JURISDICTION**

The United States District Court for the Middle District of Florida had subject matter jurisdiction over the claims of the United States pursuant to 28 U.S.C. § 1345. Direct appeal is taken to this Court from a judgment of the United States District Court, Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §1291, for review of a conviction and final sentence imposed on June 24, 2016. (Dkt. # 181.) Judgment was entered on June 28, 2016 (Dkt. # 183), and a Notice of Appeal was timely filed on July 7, 2016 (Dkt. # 196). Jurisdiction over the appeal of the sentence imposed pursuant to the United States Sentencing Guidelines is predicated upon 18 U.S.C. § 3742.

On July 19, 2016, this Court appointed undersigned counsel to represent Aaron M. Richardson on appeal and, by Order dated September 27, 2016, allowed counsel up through, and including, January 17, 2017, to file this brief.

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether the District Court erred when it failed to suppress Mr. Richardson's statements obtained in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) during his interrogation at the Jacksonville Sheriff's Office.

2.    Whether the District Court erred when it failed to suppress cell-site location information that was obtained without a warrant in violation of Mr. Richardson's under the Fourth Amendment rights.

3.    Whether the District Court erred in sentencing when it applied a two-level enhancement for obstruction of justice based on the FBI's alleged reliance on Mr. Richardson's statements immediately post-arrest and for other conduct that the government failed to link to the instant offense of conviction.

4.    Whether the District Court erred when it denied Mr. Richardson's Rule 29 Motion for Judgement of Acquittal on two counts alleging false statements by Mr. Richardson: Count 10, which agents did not believe and was a hypothetical response to a theoretical question; and Count 21, which was a Monthly Supervision Report for December 2012 that was indisputably accurate when signed.

1

# STATEMENT OF THE CASE

## I.    Course of Proceedings and Dispositions Below

On September 25, 2013, a grand jury indicted Aaron M. Richardson ("Mr. Richardson" or "Appellant") in the Middle District of Florida ("District Court") on twenty five charges: Attempted Murder of a United States District Judge; Using, Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence and Possessing and Discharging a Firearm in Furtherance of a Crime of Violence; Possession of a Firearm and Ammunition by a Convicted Felon; Possession of a Stolen Firearm and Ammunition; False Statements to the Federal Bureau of Investigation; Theft of a Firearm rom a Federally Licensed Firearms Dealer; Failures to Appear for Court Hearings; False Statements to the United States Probation Office While on Release; False Statements to the United States Probation Office; and Falsely Impersonating an Officer of the United States. (Dkt. # 1 in Case No. 3:13-cr-00177-LSC-JEG-1.)[1] The failure to appear counts relate to a prior charge of arson, *United States v. Richardson*, 3:08-cr-302-LSC-JEG (M.D. Fla.) (the "2008 Case"), from which Mr. Richardson was on supervised release at the time of most of the events charged in the Indictment.

---

[1] Unless indicated otherwise, all docket references are to the District Court docket, No. 3:13-cr-00177-LSC-JEG-1 (M.D. Fla.).

A month after Mr. Richardson's arrest, James Burke, the Federal Public Defender who had been appointed to represent Mr. Richardson in the 2008 Case, made a Motion for Psychiatric Exam, on the basis that:

> Reasonable cause exists to believe that [Mr. Richardson] may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. This belief is based on Mr. Richardson's behavior and his comments to counsel during a preliminary hearing on July 9th, 2013.

(2008 Case, Dkt. # 185.) Magistrate Judge Graham Granted that Motion the next day. (2008 Case, Dkt. # 186.)

John Ossick was appointed CJA Counsel for Mr. Richardson on October 3, 2013 (Dkt. ## 13, 15), and on the same day, Magistrate Judge Graham *sua sponte* ordered and directed an examination of Mr. Richardson to determine his competency, which had not yet been completed per his order in the 2008 Case (Dkt. # 14). For the next several years, Mr. Richardson was incarcerated without criminal proceedings while he received mental health evaluations and treatment to, among other things, restore his competency (*see, e.g.,* Dkt. ## 22, 26, 38, 47, 48).

Meredith Jones Kingsley was appointed as CJA Co-Counsel on September 22, 2015. (Dkt. # 83.) The District Court held a competency hearing on November 30, 2015, where it specifically found that Mr. Richardson was competent to proceed in the cases against him. (Dkt. # 115.) The next day, the District Court held an Evidentiary Pre-Trial Hearing (Dkt. # 119) at which several motions were addressed,

3

including Mr. Richardson's Motions to Suppress Evidence and Identification (Dkt. ## 63, 64); Motion to Sever Offenses (Dkt. # 65); and Motion to Determine Voluntariness of Statements (Dkt. # 66).[2] At the hearing, Magistrate Judge James E. Graham took notice of its own court file, Case No. 3:13-mj-M13-G25, pursuant to which the government obtained cell-site location information that Mr. Richardson sought to suppress. (Dkt. #122 at 236-38.)

Magistrate Judge Graham, sitting by designation from the Southern District of Georgia, issued a Report and Recommendation that Mr. Richardson's Motions to Suppress Evidence and Identification be denied, and the Motion to Suppress Mr. Richardson's statements be granted in part and denied in part. (Dkt. # 124, the "R&R," at 30.) Magistrate Judge Graham further recommended that the government be allowed to use at trial all statements made by Mr. Richardson except for his unwarned statements at Shands Jacksonville Hospital immediately following his arrest. (*Id.*)

---

[2] The government had filed responsive pleadings to Mr. Richardson's motions in advance of the hearing. (Dkt. ## 73-81). The government conceded in its response to Mr. Richardson's Motion to Suppress cell-site location information that it obtained the information by application and order under 18 U.S.C. § 2703(d). (Dkt. # 75 at 2.) Mr. Richardson's Motion for Notice by the Government of the Intention to Use Evidence (Dkt. # 61), Motion for Discovery of Brady Material and Rule 16 Discovery (Dkt. # 62), Motion for Copy of Defendant's Statements (Dkt. # 67), Motion for Exemplars or Tests (Dkt. # 68), and Motion for Information Regarding Prior Bad Acts (Dkt. # 69) were granted on December 2, 2015 (Dkt. # 116).

Mr. Richardson objected under seal to the R&R on January 6, 2016, arguing that he did not and was not able to wave his *Miranda* rights as to the statements he made at the Jacksonville Sheriff's Office ("JSO") in the evening and early morning hours following his arrest on June 25, 2013. (Dkt. # 130 at 9-17.) On January 12, 2016, Magistrate Judge Graham entered an order denying Mr. Richardson's Motion to Sever Count 3 and Counts 14-24 of the Indictment, finding that Mr. Richardson failed to show that the inclusion of those counts would work compelling prejudice against him at trial. (Dkt. # 131.) On January 19, 2016, the government filed under seal its response to Mr. Richardson's objections to the R&R. (Dkt. # 134.) District Judge L. Scott Coogler, sitting by designation from the Northern District of Alabama, adopted and accepted the R&R on February 4, 2016, overruling all of Mr. Richardson's objections. (Dkt. # 135.)

The case was tried to a jury over six days, from March 11-17, 2016. (Dkt. ## 156, 158-60, 162, 164.) The Court granted Mr. Richardson permission over the course of the six-day trial to maintain standing objections to the search issues that were raised in the R&R process and concerning the cell-site location information that Mr. Richardson sought to have suppressed. (Dkt. # 199 at 5-7.) The jury was charged on March 17, 2016, and during the course of deliberations, it sent a note to the District Court that read: "On one count, if we cannot come to a unanimous decision, what do we do then?" (Dkt. # 203 at 115, Court's Exh. 1.) The District

Court sent back to the jury a clarifying question asking whether the jury had unanimous agreement as to all other counts and, if so, on which count they could not reach a unanimous verdict. (*Id.* at 116, Court's Exh. 2.) When the jury answered that they had reached unanimous agreement on all counts except Count 22, the government agreed to allow a partial verdict with the option of then moving to dismiss Count 22 or having the jury deliberate further on that count. (Dkt. # 203 at 115-18.)

Later that afternoon, the jury returned a guilty verdict on 24 of 25 of the counts of the Indictment, specifically Counts 1, 2, 3, 4, 5-10, 11, 12-13, 14-21, 23-24, and 25. (Dkt. # 168.) The government orally moved to dismiss Count 22 (an alleged false statement made to the United States Probation Office), and the District Court granted the Motion. (Dkt. ## 163, 164, 203 at 128-29.) On June 24, 2016, the District Court sentenced Mr. Richardson pursuant to the Sentencing Reform Act of 1984, as modified by *United States v. Booker*, and 18 U.S.C. §§ 3551 and 3553 to a period of 4,116 months in prison. (Dkt. # 181.) The District Court entered judgment on June 28, 2016. (Dkt. # 183.) Mr. Richardson timely filed his Notice of Appeal on July 7, 2016. (Dkt. # 185.) He is currently incarcerated.

## II.    Statement of Facts

In the early morning hours of June 23, 2013, someone shot at United States District Court Judge Timothy J. Corrigan.   On June 25, 2013, law enforcement officers looking for Mr. Richardson, who was wanted on a warrant for failure to appear in connection with a proceeding in the 2008 Case. (Dkt. # 122, Transcript of December 1, 2105 Evidentiary Hearing, at 12-14, Hearing Exhibits ("Hrg. Exhs.") 1A, 1B.)  Law enforcement collected credible information that Mr. Richardson was living at an apartment in Jacksonville, Florida leased by his mother, Sharon Richardson (Dkt. # 122 at 14-20), and believed based upon further investigation and observation that he was inside the apartment that afternoon (*id.* at 20-26, 28-29, 78). After knocking and announcing themselves, law enforcement forcibly entered the apartment, where they conducted a preliminary and secondary sweep, but could not locate Mr. Richardson.  (*Id.* at 29-37, 60-62, 72.)   When Mr. Richardson did not comply with commands to come out of hiding, law enforcement gave a verbal K-9 announcement before releasing a K-9 that located Mr. Richardson in a closet.  (*Id.* at 37-38, 79-84.)

Law enforcement arrested Mr. Richardson and transported him to Shands Jacksonville Hospital to treat his K-9 bite wounds.  (Dkt. # 122 at 38.)  FBI Special Agents Alexander Silverstein and Scott Waters interrogated Mr. Richardson there. (*Id.* at 131-33.)  They later testified that Mr. Richardson was not a suspect at that

time in the Judge Corrigan shooting investigation in part because the rifle found in Mr. Richardson's apartment was of a different caliber than the handgun law enforcement believed was used by the shooter. (*Id.* at 134, 147.) The FBI also did not consider Mr. Richardson a suspect in the Judge Corrigan shooting because Mr. Richardson was someone with a "very slim" connection to Judge Corrigan (*id.* at 132); the FBI was just trying eliminate him off the suspect list (*id.* at 134). Mr. Richardson was such a minor suspect that the agents did not bother to warn Mr. Richardson about his *Miranda* rights, nor did they ask about the firearm or mention Judge Corrigan's name. (*Id.* at 135-38.) At the conclusion of their questioning at the hospital, the agents did not believe that that Mr. Richardson was "the one." (*Id.* at 138.)

Later in the evening on June 25, law enforcement transferred Mr. Richardson from the hospital to an interrogation room in the JSO where FBI Special Agents Silverstein and William ("Bill") Logan – the lead investigator into the Judge Corrigan shooting – questioned him. (Dkt. # 122 at 168-71, Hrg. Exhs. 3, 24.) At the beginning of the questioning, the agents methodically walked Mr. Richardson through the Advice of Rights form, which he ultimately refused to sign. (Dkt. # 122 at 229-34, Hrg. Exhs. 24, Video of June 25, 2013 Interview at the JSO, 24A, Cropped Video of June 25, 2013 Interview at the JSO.) The agents were not able to get a conclusive, affirmative answer or agreement from Mr. Richardson that he

8

understood his rights and was willing to answer questions without a lawyer present. (*Id.*) During that second interrogation, Special Agent Silverstein referred back to questions asked of Mr. Richardson at the hospital. (Hrg. Exhs. 24, 24A.) Special Agent Logan testified that, "the volume with which [Mr. Richardson] spoke and some of the things he decided to speak about at different times didn't immediately make sense to me." (Dkt. # 122 at 227.) The agents interviewed Mr. Richardson for two hours before he was processed into the Duval County Jail. (*Id.* at 168-69.)

Law enforcement continued its investigation of the Judge Corrigan shooting in the following weeks and months, and ultimately a grand jury indicted Mr. Richardson for the shooting on September 25, 2013. (Dkt. # 1.)

## III.    Statement of the Standard or Scope of Review

This Court applies a mixed standard of review to the denial of a motion to suppress, "reviewing the district court's findings of fact for clear error and its application of the law to those facts *de novo*." *United States v. Farley*, 607 F.3d 1294, 1325-26 (11th Cir. 2010). After subtracting the statements that should not have been admitted at trial, the Court will set aside the conviction unless the remaining evidence is so overwhelming that the Court is convinced beyond a reasonable doubt that the improperly admitted evidence did not affect the verdict. *United States v. Street*, 472 F.3d 1298, 1315 (11th Cir. 2006).

9

In reviewing a district court's imposition of an obstruction-of-justice sentencing enhancement, this Court reviews factual findings for clear error and application of factual findings to the Sentencing Guidelines *de novo*. *United States v. Doe,* 661 F.3d 550, 565 (11th Cir. 2011) (citation and internal quotation marks omitted).

The Court reviews *de novo* a district court's denial of a Rule 29 motion for a judgment of acquittal. *United States v. Gonzalez*, 834 F.3d 1206, 1214 (11th Cir. 2016). Reversal is proper if "no trier of fact could have found guilt beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

## SUMMARY OF THE ARGUMENT

First, Mr. Richardson's custodial statements at the JSO on the evening of his arrest, made without the benefit of counsel, should not have been admitted because he did not and could not have made a knowing, intelligent, and voluntary waiver of his right to remain silent and his right to counsel. *Miranda v. Ariz.*, 384 U.S. 436 (1966).

Second, the government obtained cell-site location information related to Mr. Richardson without a showing of probable cause in violation of Mr. Richardson's Fourth Amendment rights. The cell-site location information therefore should not have been admitted against him at trial.

Third, the district court's application of an upward Adjustment for Obstruction of Justice based on U.S. Sentencing Guidelines § 3C1.1 was clear error because Mr. Richardson's statements to agents at the JSO post-arrest did not influence or mislead the FBI agents interviewing him. Application Note 5(B) to § 3C1.1 states that the section does not normally cover "making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) [] applies." Application Note 4(G) lists as an example of covered conduct "providing a materially false statement to a law enforcement officer that *significantly obstructed or impeded* the official investigation or prosecution of the instant offense." (Emphasis added.) The government provided no evidence that the FBI believed Mr.

11

Richardson's statements, considered them material, or that Mr. Richardson's statements in any way obstructed or impeded the investigation, and certainly not "significantly" so. Additionally, Mr. Richardson's conduct for which the two level increase was imposed was not related to the "instant offense" of the attempted murder of a United States District Judge as required by this Guideline.

Fourth, the District Court's denial of Mr. Richardson's Rule 29 Motion with respect to alleged false statements in Counts 10 and 21 was in error. Both counts of conviction should be reversed because the government did not present sufficient evidence to satisfy all of the elements of the charged violations of 18 U.S.C. § 1001.

## ARGUMENT & CITATION OF AUTHORITY

**I.     The District Court Erred by Denying Mr. Richardson's Motion to Suppress Statements He Made at the JSO**

The District Court correctly determined that Mr. Richardson's initial statements made at Shands Jacksonville Hospital were the product of a custodial interrogation in violation of the procedural safeguards established by the United States Supreme Court in *Miranda vs. Arizona*, 387 U.S. 437 (1966). (Dkt. # 124 at 21-23.) But, the District Court erred in denying the Motion to Suppress as to the statements Mr. Richardson made when he was interrogated again later that evening at the JSO (*id.* at 23-26) because Mr. Richardson did not and could not have validly waived his rights.

**A.     Mr. Richardson Did Not Waive His Rights Against Self-Incrimination and to the Presence of a Lawyer During the Interrogation at the JSO**

The government did not meet its burden to demonstrate that Mr. Richardson validly waived his rights late at night on the day of his arrest. Because "[t]he courts must presume that a defendant did not waive his rights[,] the prosecution's burden is great." *N.C. v. Butler*, 441 U.S. 369, 373 (1979).

Special Agent Logan described how Mr. Richardson gave succinct and direct affirmative responses when they reviewed each of the six preliminary statements on the Advice of Rights form, which contrasted starkly to Mr. Richardson's equivocation at the end of the exchange. (Dkt. # 122 at 230-33.) Then, the agents

13

hoped for one final, unambiguous answer to: "I have read this statement of my rights and I understand what my rights are.  At this time I am willing to answer questions without a lawyer present."  (*Id.*)  According to Special Agent Logan's testimony at the pre-trial evidentiary hearing, that critical portion of the *Miranda* warning process went as follows:

> **Q.** Next [Agent Silverstein] says he wants to get further final affirmation and then get to the signature and agreement. He says, "I have read this statement of my rights and I understand what my rights were. At this time I'm willing to answer questions without a lawyer present."  At that time, sort of the big final question, [Mr. Richardson] does not give an affirmative response, does he?
>
> **A.** I believe Mr. Richardson asked some follow-up questions, confirmation questions, at that time.
>
> **Q.** Well, at one point, I believe, Mr. Richardson talked about wanting to go home, correct?
>
> **A.** At one point he asked [Agent Silverstein] if we could help get him home. He asked Agent Silverstein if we could help get him home.
>
> **Q.** We can't really hear that, but we do hear Mr. Silverstein's response, which is "I can't get you home right now. We have some other things to sort out."
>
> **A.** Correct.
>
> **Q.** So he did not get an affirmative response to that question that time, did he?
>
> **A.** At the end of the questioning he may not have, but before we continued, he did receive an affirmative response --
>
> **Q.** But he --
>
> **A.** -- that Mr. Richardson was willing to continue speaking with us without a lawyer present.
>
> **Q.** But we see in the video that he tried to get the approval again, and Mr. Richardson responds that he's about to fall and he holds the cup to his head, correct?

**A.** I don't remember the order, but Mr. Richardson agreed continue speaking with us without a lawyer present. When made the affirmation, I don't recall.

**Q.** He said, "I can't sign anything. I can't answer," correct?

**A.** I don't recall. I remember him saying he can't sign, which point we made note of him not being willing to sign.

**Q.** And Mr. Silverstein kept saying, "Okay. Okay. Okay."

**A.** I don't recall.

**Q.** Okay. So you went in – or Mr. Silverstein went for clear and unequivocal waiver and did not get it.

**A.** No. It was clear and unequivocal in our minds when were there. Mr. Richardson asked follow-up questions, but didn't mean he didn't affirm.

**Q.** Okay. And you signed the form for him anyway, or Mr. Silverstein signed the form.

**A.** Once we believed he had affirmed, we signed for him indicating he would not sign and signed it ourselves.

(Dkt. # 122 at 232-33.)

Implied waivers are clearly disfavored. *United States v. Hernandez*, 574 F.2d 1362, 1371 (5th Cir. 1978).[3] And, while not required, "[a] signed Miranda waiver is usually strong evidence that the defendant waived his rights." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010). Yet, the District Court erroneously concluded from the evidence, including Mr. Richardson's refusal to affirm his willingness to waive his rights and refusal to sign the advice of rights card

---

[3] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in the Eleventh Circuit).

15

(Hrg. Exhs. 19, 24, 24A), that Mr. Richardson implicitly waived his rights to remain silent and have an attorney present with him during the interrogation at the JSO (Dkt. # 124 at 24). The evidence shows that Mr. Richardson never gave the waiver that the agents sought from him to permit them to conduct the interrogation, but they nevertheless proceeded questioning Mr. Richardson. (Hrg. Exhs. 24, 24A.) Thus, it was error for the District Court not to suppress Mr. Richardson's statements.

### B. Mr. Richardson Could Not Have Voluntarily, Knowingly, and Intelligently Waived His Rights

Even if Mr. Richardson technically waived his rights, he did not do so voluntarily, knowingly, and intelligently, and, therefore, the District Court erred in failing to suppress his statements. The validity of a waiver is evaluated in the totality of the circumstances in which it is made – "[o]nly if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal quotations omitted). In evaluating the totality of circumstances, a Court should consider factors such as: police coercion; length, location, and continuity of the interrogation; the defendant's maturity, education, physical condition, and mental health; and whether the suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 694-95 (1993). Because the District Court failed to appropriately consider the totality of the circumstances, including Mr. Richardson's history of mental health and evident

16

confusion at the ultimate waiver question, and because the District Court applied too high a standard to its analysis of Mr. Richardson's supposed waiver, it erred in failing to suppress his statements.

The District Court should have considered the circumstances of Mr. Richardson's arrest and interrogation on June 25, 2013 against the background of his mental health history and condition in assessing the validity (or not) of his alleged waiver. *See Miller v. Dugger*, 838 F.2d 1530, 1539 (11th Cir. 1988) (stating "mental illness is ***certainly*** a factor that a trial court should consider when deciding on the validity of a waiver") (emphasis added). Yet the District Court made no mention of Mr. Richardson's history of mental illness. Law enforcement identified Mr. Richardson as a suspect because of another matter already before the court, which involved extensive mental health examinations and treatment. At the time of Mr. Richardson's arrest and interrogation, the government was well-aware of these issues. The Assistant United States Attorney who requested and the magistrate judge who issued the bench warrant pursuant to which Mr. Richardson was arrested expressed their concerns that he would do something "significant, which . . . is a real possibility, given his psychological history" and observed that "his actions are sometimes a little bizarre." (2008 Case, Dkt. # 192, Transcript of June 11, 2013 Arraignment on Superseding Petition, at 3-4.)

17

Mr. Richardson's extensive prior mental health history coupled with the evaluations following his arrest, which were presented to the District Court for consideration (*see, e.g.,* Dkt. 130 at 12-16), cast great doubt on his ability to have made a knowing and voluntary waiver of his Miranda rights at the JSO on June 25, 2013. And "[i]f a defendant cannot understand the nature of his rights, he cannot waive them intelligently." *Dugger*, 838 F.2d at 1539. There is no evidence that the District Court considered how Mr. Richardson's mental impairment interfered with his ability to think clearly or with understanding of the charges that he was facing, compromising his capacity to waive his rights.

The District Court also failed to give appropriate weight to the fact that Mr. Richardson sought clarification at the exact point when he was asked to waive his rights. *See United States v. Stevenson*, No. 1:11-CR-350-ODE-RGV, 2012 WL 1418635, at *4 (N.D. Ga. Apr. 23, 2012) (noting that whether a defendant asked for clarification is a factor to be considered in determining whether he knowingly waived his *Miranda* rights). Whether the interrogating officer confirms that the defendant understands each right is a factor to be considered in determining whether a waiver was knowingly and voluntarily given, but the District Court did not adequately consider this factor here. *See United States v. Bing*, No. 308-CR-281-J-32MCR, 2009 WL 179531, at *3 (M.D. Fla. Jan. 23, 2009).

18

The District Court applied too high a standard to Mr. Richardson's waiver because it failed to take the proceeding facts into account, especially in concluding that there was no taint from the first, un-Mirandized interrogation at the hospital. Quite the opposite of considering his mental health and limitations, the District Court concluded, "it would have been clear to Richardson that the questioning at the [JSO] was a new and distinct experience and that he had a genuine choice of whether to follow-up on the earlier information he had given to SA Waters." (Dkt. # 124 at 25.) Not only that, the District Court presumed that Mr. Richardson could recognize that the two sessions were entirely different in character based on their length and could also appreciate and distinguish the depth of the questioning in the two sessions. (*Id.*) Even assuming Mr. Richardson had that acumen, when all evidence points to the contrary, he would not have had the ability to evaluate either of those things at the time he had to invoke or waive his rights. He would only have had the ability to evaluate those characteristics after the second interrogation concluded, when the *Miranda* waiver decision was moot. The District Court also incorrectly cited the fact that the two sessions of questioning were "performed by entirely separate officers" (*id.*), when Agent Silverstein was present at both interrogations and referred back to the hospital interrogation when he was questioning Mr. Richardson at the JSO (Hrg. Exhs. 24, 24A).

19

The government did not meet its great burden of showing that Mr. Richardson "was effectively warned of his rights and that he then intelligently and understandingly declined to exercise them by making the statement." *United States v. Micieli*, 594 F.2d 102, 107 (5th Cir. 1979). Mr. Richardson was not a person who could have waived his rights "voluntarily, knowingly, and intelligently" and he did not do so in the late evening and early morning hours of June 25, 2013. *See United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995) (citing *Miranda,* 384 U.S. at 444). He was not aware of both: (A) the nature of the right being abandoned; and (B) the consequences of the decision to abandon the right. *Moran*, 475 U.S. at 421. Properly viewed in the totality of the circumstances, his statements were not voluntarily made and should not have been admitted for any purpose at trial. *See Hart v. Att'y Gen. of the State of Fla.*, 323 F.3d 884, 892-96 (11th Cir. 2003). The District Court erred in finding otherwise, and after subtracting those statements that should not have been admitted at trial, the remaining evidence is not so overwhelming that this Court should be convinced beyond a reasonable doubt that the improperly admitted evidence did not affect the verdict. *See Street*, 472 F.3d at 1315.

## II. The District Court Erred by Denying Mr. Richardson's Motion to Suppress Cell-Site Location Information That Was Obtained Without a Showing of Probable Cause

The collection and production of cell-site location information in this case constitutes a search under the Fourth Amendment and thus required a showing of probable cause and a search warrant. The District Court's denial of Mr. Richardson's Motion to Suppress on those grounds was in error. Materials that the government produced in discovery and used at trial attempt to depict the location of a telephone associated with the number XXX-XXX-6146 that was allegedly used by Mr. Richardson on specific dates and times. These conclusions were based upon telephone records that the government obtained pursuant to the Stored Communications Act, 18 U.S.C. §§ 2703(c) and (d), the collection of which does not require the government to make a showing of probable cause, but only demonstrate that there are reasonable grounds that the records or information sought are relevant to an ongoing criminal investigation. Furthermore, it is believed that similar records requests may have been made for additional phone numbers.

Mr. Richardson reasserts here his objection to the admission of the evidence of the cell-site location information because the method by which the government obtained that evidence – by in-camera order, rather than a warrant supported by a showing of probable cause – violated his constitutional rights. U.S. Const. amend. IV (stating in part, "no Warrants shall issue, but upon probable cause, supported by

Oath or affirmation . . . "). It is a "basic principle of Fourth Amendment law" that searches and seizures without a warrant "are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal citations and quotations omitted). That constitutional concern was compounded when information concerning the telephone number ending in -6146, including which cell towers and the locations used or activated at particular times, were introduced at trial and used to formulate conclusions as to the geographic location of the phone – and, by association, Mr. Richardson – at various relevant times.

Mr. Richardson is mindful of the *en banc* decision of the Eleventh Circuit Court of Appeals in *United States v. Davis*, 785 F.3d 498, 511-13 (11th Cir. 2015), which is adverse to this claim. Additionally, Mr. Richardson is aware of other authorities' holdings, some of which have reached a different conclusion as to this issue. *United States v. Graham*, 796 F.3d 332, 344-61 (4th Cir. 2015), *rev'd en banc*, 824 F.3d 421, 425-29 (4th Cir. 2016) (affirming district court ruling that government did not violate Fourth Amendment by obtaining historical cell-site location information from cell phone provider without warrant), *cert. filed*; *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600, 608-15 (5th Cir. 2013); *In re Application for Tel. Info. Needed for a Criminal Investigation*, 119 F. Supp. 3d 1011, 1024-26 (N.D. Cal. 2015); *In re Application of United States for an Order Authorizing Release of Historical Cell–Site Info.*, 809 F. Supp. 2d 113, 119–

27 (E.D.N.Y. 2011). This Court should reverse the District Court's decision and suppress the cell-site location information because it was improperly obtained in violation of Mr. Richardson's Fourth Amendment rights.

## III.    The District Court Erred In Applying a Sentencing Enhancement for Obstruction of Justice

It was error for two reasons for the District Court to apply a two-level enhancement to Mr. Richardson's sentence based on Sentencing Guidelines § 3C1.1 for Obstruction of Justice, which is only appropriate where a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." First, Mr. Richardson's statements post-arrest did not significantly obstruct or impede the official investigation into Judge Corrigan's shooting. Second, the other conduct that the Probation Office and government argued formed the basis of the enhancement was not linked in any way to the instant offense of conviction.

### A.    The False Statements Charged Are Conduct Ordinarily Not Covered by § 3C1.1 and Should Not Have Been Covered Here

Generally, false statements made not under oath, to law enforcement, are not actionable under § 3C1.1, and the District Court erred in deviating from that general rule here. U.S.S.G. § 3C1.1, cmt. n.5(B). The totality of Mr. Richardson's false statements made to Special Agents Logan and Silverstein at the JSO that allegedly derailed an FBI investigation into a murder of a federal judge were that: (1) Mr.

23

Richardson was at his mother's apartment at the time of the attempted murder (Count 5); (2) Mr. Richardson did not know about the rifle found in the apartment (Count 6); (3) the bedroom in which the rifle was located was not Mr. Richardson's room (Count 7); and (4) charges pending against Mr. Richardson in Volusia County, Florida had been dropped (Count 9). Only if those false statements significantly obstructed or impeded the official investigation or prosecution are they covered conduct to which the upward adjustment applies. U.S.S.G. § 3C1.1, cmt. n.4(G), n.5(B).

Accordingly, a district court applying § 3C1.1 "must find that the statements were false and material"[4] and "must also explain how the statements significantly obstructed or impeded the investigation or prosecution of the offense." *United States v. Uscinski*, 369 F.3d 1243, 1246 (11th Cir. 2004) (citing *United States v. Alpert,* 28 F.3d 1104, 1107-08 (11th Cir. 1994) (en banc)). Mr. Richardson neither provided materially false statements to a law enforcement officers, nor did his statements actually hinder the official investigation or prosecution of his case. The government did not detail a single action it took that it would not have taken (or, conversely, a single action not taken that it would have taken) had Mr. Richardson not made those statements; in other words, the government presented no evidence of actual

---

[4] A "material statement" is defined in the Guidelines as one that "if believed, would tend to influence or affect the issue under determination." U.S.S.G § 3C1.1, cmt. n.6.

hindrance. *Cf. United States v. McGuinness*, 451 F.3d 1302, 1305 (11th Cir. 2006) (finding actual hindrance where government presented evidence that a police helicopter, a tracking dog, and approximately fifty law enforcement officers were used to find defendant who was not truthful about his identity when approached by law enforcement 24-hours prior). The District Court perpetuated that failure by neglecting to make the required specific factual findings before applying § 3C1.1.

The entirety of the District Court's treatment of its application of § 3C1.1 is reflected in the following two-sentence passage from Mr. Richardson's sentencing hearing:

> I believe that the defendant did, in fact, take actions and make statements in an effort to mislead the Federal Bureau of Investigation, particularly with regard to the investigation of the attempted murder of Judge Corrigan.
>
> You know, where he was, giving the alibi that he was at his mother's house, whatnot, there are several different things that he said that were just absolutely misleading in an effort to mislead law enforcement and get them on another trail rather than himself, so I'm going to overrule that objection.

(Dkt. # 190 at 9.) The District Court neither made specific findings that any – or all – of Mr. Richardson's statements that allegedly misled the government were false or material, nor explained how those statements impacted the investigation or prosecution of the attempted shooting of Judge Corrigan.

The District Court did not have the ammunition it needed to make those required findings that the statements hindered the investigation because the

government never presented any evidence that it did. No law enforcement testified as to how Mr. Richardson's statements misdirected their investigation. The best evidence that law enforcement did not intend to and did not actually rely on Mr. Richardson's statements was that they did not bother Mirandizing him during their first interview at Shands Jacksonville Hospital. (Dkt. # 122 at 135-38.) Whatever Mr. Richardson later told Special Agents Logan and Silverstein at the JSO should not have impacted the next steps they took in the investigation, and there is no evidence that it did. It would seem to be rare that law enforcement rely heavily on a suspect's candor to guide their investigation. It would be even more exceptional for FBI agents selected to handle a crime of the significance of the attempted murder of a federal judge to rely upon the statements of a suspect who was taken into custody only after law enforcement breached multiple locked doors and released a K-9 unit that located him hiding in a pile of laundry in his mother's closet. The agents were going to – and did – investigate based on their extensive training and experience, and would not be misled by what Mr. Richardson told them.

In short, it was error for District Court to find that law enforcement relied on Mr. Richardson's statements to their detriment. By the time of the interview, law enforcement (and Special Agent Logan, in particular) had spoken with Sharon Richardson and searched the room where the rifle was located, which she identified as Mr. Richardson's bedroom and in which they found his ID and other personal

items. And at most, the FBI had to speak with one other person – Mr. Richardson's teenage brother – to resolve their doubt (if any) about the truthfulness of his statements about the apartment.

Mr. Richardson's run-of-the-mill denials of knowledge contrast starkly with false statements that this Court has found fall within the 4(G) covered conduct. Mr. Richardson did not, for example, "concoct[] a false, exculpatory story that misled the government," as did the defendant in *Uscinski*, which caused the government to take an additional, unusual step of having foreign governments trace money to determine to whom it was paid. 369 F.3d at 1247. Thus, it was error for the District Court to conclude that the charged statements fell within U.S.S.G. § 3C1.1 n.4(G).

**B.**     **The False Statements Charged Are Not Covered Conduct Under § 3C1.1 Because They Were Not Tied to the "Instant Charge of Conviction"**

To the extent that the District Court's application of § 3C1.1 is based on findings that Mr. Richardson's activities constituted covered conduct warranting an upward enhancement, that decision was in error. Because it did not make the required specific factual findings, we presume that the District Court erred both in making and applying its factual findings in imposing the two-level upward variance for obstruction of justice on these bases as well – there government provided no evidence or argument that the "covered conduct" for which the two level increase

27

was imposed was related to the "instant offense" of the attempted murder of a United States District Judge as required by this Guideline.

The first clause of the Guideline is a mandatory predicate to the application of the upward adjustment: "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) . . . ." U.S.S.G. § 3C1.1. The Probation Office defined in the Presentence Investigation Report the "instant offense of conviction" as Count 1. (Dkt. # 174.)

The Probation Office and government argued that Mr. Richardson's conduct satisfied three examples of covered conduct under Commentary Note 4 to § 3C1.1:

(C) Mr. Richardson's "sham order" exonerating him of all pending charges anywhere and altered traffic reports and medical records that he presented to Volusia County, Florida authorities constituted a production of a false, altered, or counterfeit documents or records during an official investigation or judicial proceeding;

(E) Mr. Richardson willfully failed to appear, as ordered, for two judicial proceedings; and

(H) Mr. Richardson provided materially false information to a probation office in respect to a presentence or other investigation for

28

the court when he lied about his failure to appear for the second of his

revocation of supervised release hearings in the 2008 Case.

(Dkt. ## 174, 190 at 7-9.)

Even assuming the District Court made required factual findings, the Court's application of the factual findings is erroneous because – while those activities meet the definitions of Covered Conduct – neither the Probation Office, nor the government, nor the District Court linked any of that conduct to an investigation, prosecution, or sentencing of the instant offense of conviction, or even any relevant conduct to the instant offense of conviction, much less the obstruction of such.

In sum, the application of the upward departure was in error, and Mr. Richardson further objects to each additional paragraph in which the cumulative total of this sentence was impacted by the erroneous enhancement per § 3C1.1.

## IV.    The District Court Erred By Denying Mr. Richardson's Rule 29 Motion for Judgment of Acquittal as to Counts 10 and 21

Evidence presented at trial was insufficient to sustain the false statement convictions on false statement Counts 10 and 21, and it was accordingly error for the District Court to deny Mr. Richardson's Rule 29 Motion for Judgment of Acquittal.  To sustain a conviction under 18 U.S.C. § 1001 for making false statements to a federal government agency, this Court must find that the government presented sufficient evidence to prove beyond a reasonable doubt: "(1) that the defendant made a false statement; (2) that the statement was material; (3) that the

29

defendant acted with specific intent to mislead; and (4) that the matter was within the purview of a federal government agency." *United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002). The government did not present sufficient evidence at trial of several elements of the false statement offenses charged in Counts 10 and 21. Specifically, the government failed to show that either of the two charged statements were false, and not only failed to show that the statements in Count 10 were material, but the only testimony offered was that the interviewing agents did not believe those statements of Mr. Richardson at all.

A.    **Mr. Richardson's Statements That Formed the Basis of Count 10 Were Speculative Answers to Hypothetical Questions Posed to Him and Therefore Could Not Have Been False Statements**

The government did not present sufficient evidence to support the false statement in Count 10, and no trier of fact could have found Mr. Richardson's guilt beyond a reasonable doubt because it was not false or material. As charged, Count 10 is a speculative response that Mr. Richardson provided to a hypothetical question posed to him:

> *If* the defendant's fingerprints or DNA were on the Savage Arms .30-06 caliber rifle, serial number H783115, *it was because* the defendant touched the rifle in an attempt to get his shoes out of a pile of belongings that law enforcement officers had assembled and placed in a pile during his arrest on June 25, 2013.

(Dkt. # 1) (emphasis added). The charge is essentially a summary characterization of a several-minute exchange between Mr. Richardson and the agents at the JSO that

30

is far less straightforward than it appears on the face of the Indictment. (Hrg. Exh. 24, Trial Exhibit ("Tr. Exh.") 65B, Transcript of June 25, 2013 Interview at the JSO.)[5] During that portion of the interview, Mr. Richardson did not give a single, straightforward answer to a single, straightforward question. Instead, he was forced to speculate about how his fingerprints and/or DNA could have arrived on the rifle that was found in the apartment in which he was living.

For example, when Special Agent Silverstein asked Mr. Richardson if he remembered touching a rifle, Mr. Richardson responded that he did not remember, but also added, "[n]ow, if I touched it, like I told you, it could've been there." (*Id.*) When Special Agent Logan later asked if the rifle was near Mr. Richardson when he was hiding in the closet (to avoid the arresting officers and the K-9 unit), Mr. Richardson responded, "if my prints on there, they on there. Not any way I could tell you how . . . ." (*Id.*) At other times in that exchange, Mr. Richardson also hypothesized that his spit, blood, sweat, and/or tears may have splashed on the floor or on the pile of items the investigating officers located in the apartment and placed around him. (*Id.*) Mr. Richardson never even acknowledged that a rifle was among those items, but recalled several times that he may have seen or felt a dark rod with a rubber back as he was digging through the pile. (*Id.*)

---

[5] Both Hearing Exhibit 24 and Trial Exhibit 65A are the Video of Mr. Richardson's June 25, 2013 interview at the JSO, introduced during two different proceedings in the District Court.

Because both the falsity and materiality elements required of a false statement are lacking, the District Court erred in denying Mr. Richardson's Rule 29 motion.

### i.    Mr. Richardson's Hypothetical Statements Are Not False

A rational factfinder could not have found the essential element of falsity beyond a reasonable doubt in what is charged in Count 10 because Mr. Richardson did not explain how his DNA or fingerprints got onto the rifle found in the apartment in which he was living, but merely speculated as to how that could have happened.

The literal truth doctrine is instructive here.  This Court has explained, citing *Bronston v. United States,* 409 U.S. 352, 362 (1973), that an answer that is non-responsive, false by implication, or subject to conflicting interpretations, if literally true, is not perjury.  *United States v. Duncan*, 166 F. App'x 464, 467 (11th Cir. 2006).[6]  A hypothetical answer is literally true because it is not capable of being false; put differently, Mr. Richardson was not lying when he was being asked to guess.  Thus, a rational factfinder could not have found that Mr. Richardson's speculative answer to a hypothetical question was false.

The Southern District of New York directly addressed this argument and concluded that false statement prosecutions cannot be based on answers to

---

[6] Although *Bronston* involved a claim of perjury, it has been expanded and applied as a defense to false statement charges under 18 U.S.C. § 1001, and the logic of those decisions is equally applicable to Mr. Richardson's challenge to his conviction on Count 10.  *See United States v. Manapat*, 928 F.2d 1097, 1099 (11th Cir. 1991).

hypothetical questions. *United States v. Carey*, 152 F. Supp. 2d 415, 424 (S.D.N.Y. 2001). That court reasoned that, "when the defendant describes what he 'would have done' rather than what he actually did, the defendant is not bound by reality, but rather is free to describe a course of action which would have been appropriate under the circumstances." *Id.* So too here, Mr. Richardson was invited to – and did – respond to theoretical questions and hypothesize how his fingerprints and DNA *could* be found on a rifle located in the apartment *if* the agents conducted the relevant testing. "A reasonably minded jury must necessarily entertain a reasonable doubt as to [Mr. Richardson's] guilt" on Count 10 because his statements were not false. *See United States v. Gianni,* 678 F.2d 956, 959 (11th Cir. 1982).

> ii.    **Mr. Richardson's Statements Were Not Material Because the Agents Did Not Believe Him and, Alternatively, They Were Hypothetical**

Additionally, no rational factfinder could have concluded that Mr. Richardson's statements were material where: (A) the sole government witness who testified about Count 10 confirmed that the agents "knew" Mr. Richardson was lying when he made the statements; and, alternatively, (B) the charged statements are Mr. Richardson's speculative responses to hypothetical questions. To prove materiality under 18 U.S.C. § 1001, the government had to show that Mr. Richardson's statements had "a natural tendency to influence" or were "capable of influencing, the decision of the decisionmaking body to which [they were] addressed." *United*

*States v. Neder*, 197 F.3d 1122, 1133 (11th Cir. 1999) (internal quotation marks and citations omitted).

Special Agent Logan testified at length on two occasions about Mr. Richardson's interview at the JSO and the early days of the investigation into the shooting of Judge Corrigan, but said nothing about what investigators did or did not do in response to Mr. Richardson's particular statements, or even what they might have done in response in the investigation, which he oversaw. (Dkt. # 122 at 150-236, Dkt. # 200 at 153-232.) Indeed, when asked if he challenged Mr. Richardson's account of feeling around in a pile of items that law enforcement placed near him after he was arrested, Special Agent Logan responded: "On occasion we did [challenge Mr. Richardson], but specifically when he said this, we knew he was lying. He was sticking with his story." (Dkt. # 200 at 201.)

It is further evident that Mr. Richardson's statements were not material when they are properly viewed in context, as they must be. By the time Special Agent Logan participated in that interview – Mr. Richardson's second of the evening of his arrest – Special Agent Logan had already taken several critical steps in the investigation. For example, he had already obtained consent from Mr. Richardson's mother to search the room in the apartment where the rifle was located, and he personally seized the rifle during that search. (Dkt. # 200 at 169.) Special Agent Logan described that he took special precautions during that seizure to ensure the

34

integrity of the rifle for scientific analysis (Dkt. # 200 at 175-76), which was conducted at length at the FBI lab in Quantico, Virginia (*id.* at 172-73.). Special Agent Logan did not explain how the statements Charged in Count 10 influenced the government investigation because Mr. Richardson's disjointed and rambling statements did not and were not capable of influencing a sophisticated FBI investigation into the shooting of a federal judge. Therefore, they were not material.

Moreover, a jury could not have reasonably found that Mr. Richardson's hypothetical answers during a several-minutes-long exchange between Mr. Richardson and the interviewing agents were material. The materiality requirement of 18 U.S.C. § 1001 was intended "to exclude 'trivial' falsehoods from the purview of the statute." *United States v. Baker*, 626 F.2d 512, 514 (5th Cir. 1980) (citation omitted). Statements that lack "the capacity to influence a determination required to be made are too 'trivial' to violate the statute." *Id.* Mr. Richardson's statements here contrast starkly with false statements that this Court have found to be material. *See United States v. House*, 684 F.3d 1173, 1204 (11th Cir. 2012) (affirming conviction based on record evidence demonstrating how falsified reports were used); *United States v. Gafyczk*, 847 F.2d 685, 691 (11th Cir. 1988) (relying on testimony demonstrating how falsified forms were used).

In sum, the evidence presented at trial was insufficient to support a conviction on Count 10, and the District Court reversibly erred when it denied Mr. Richardson's

motion for judgment of acquittal on Count 10.  The government introduced no proof that Mr. Richardson's statements about his fingerprints and DNA on a rifle found in the apartment where he was found could conceivably have affected or did affect the government's investigation into Judge Corrigan's shooting.

**B.    The Report Mr. Richardson Submitted to the Probation Office for December 2012 Was Accurate When He Signed It Attesting to its Truth and Therefore Is Not a False Statement**

The government did not present sufficient evidence for a reasonable factfinder to conclude that Mr. Richardson's Monthly Supervision Report for December 2012 ("the Report") was false on the date it was signed, or when it was submitted to the U.S. Probation Office.  On Part C of the Report, Mr. Richardson indicated by checking the "No" box that he had not been "arrested or questioned by a law enforcement officer" during that month.  (Tr. Exh. 88.)  At the bottom of the second page, Mr. Richardson signed and dated the Report December 12, 2012, thereby certifying that "all information furnished is complete and correct to the best of my knowledge."  (*Id.*)  On December 31, 2012, Mr. Richardson was arrested on an out-of-county warrant for burglary, and released from jail the following day.  (Dkt. # 201 at 123-25.)  The Report was stamped received by the U.S. Probation Office on January 3, 2013.  (Tr. Exh. 88.)  The basis of the false statement charged in Count 21 is that Mr. Richardson's December 31st arrest was not included in the Report. (Dkt. # 1.)

36

The falsity required by 18 U.S.C. § 1001 "can be established by a false representation or by the concealment of a material fact." *United States v. Calhoon*, 97 F.3d 518, 524 (11th Cir.1996). A falsity through concealment exists "where disclosure of the concealed information is required by a statute, government regulation, or form." *United States v. Gannaway*, 477 F. App'x 618, 623 (11th Cir. 2012). The government did not articulate how the Report was false or when falsity attached to it. Because there is no evidence from which a jury could reasonably conclude that, at the time of signing the Report, Mr. Richardson knew or reasonably should have known it to be false and intended to deceive by concealing that he had been arrested or questioned by a law enforcement officer during the month (when, in fact, he had not been), a judgment of acquittal was required. *See United States v. Lange*, 528 F.2d 1280, 1288 (5th Cir. 1976).

### i. The Government Did Not Rebut the Truth of Mr. Richardson's December 30 Signature and Certification

There is no – and the government did not present any – evidence that Mr. Richardson's attestation that "all information furnished is complete and correct to the best of my knowledge," was false when made on December 30, 2012. The only witness who testified specifically about the Report was Sally Watson, who served as Mr. Richardson's Probation Officer during much of the time he was on supervised release. (Dkt. # 200 at 307, 311.) On cross examination, Ms. Watson agreed that

37

"the [R]eport was accurate at the time it was signed with that affirmation you told us about . . . with respect to those dates." (Dkt. # 201 at 33-36.)

Contract cases – which presume dated documents to be true on their face – provide useful analogies here. *See, e.g., Rauso v. Sutton*, No. 99-cv-2817, 2004 WL 1207640, at *1 n.2 (E.D. Pa. Mar. 30, 2004) (presuming that the dates appearing on the documents were correct where opposing party offered no evidence to contradict); *Amoroso v. Sw. Drilling Multi-Rig P'ship No. 1*, 646 F. Supp. 141, 145 (N.D. Cal. 1986) (indicating that plaintiffs have a "heavy burden" to show that the dates appearing on the contract were false); *Kirkman v. Pittman*, 111 So. 2d 583, 585 (Ala. 1959) ("Where there is no indication [on the contract's] face that the date is false, the presumption of law is that it was executed on the day of its date.").

So too, False Claims Act cases are instructive. In education cases, the theory of liability is based on a program participation agreement where a school makes various certifications to become eligible for funding. Relators use that document as the false record, but case law holds that if the document is true when signed, liability cannot attach if it later becomes false even though the school is using that very document to obtain loans. *See, e.g., United States v. Sanford-Brown, Ltd.,* 788 F.3d 696, 709 (7th Cir. 2015) (subsequent history omitted).

The government presented no evidence that Mr. Richardson did not sign the Report on December 30, 2012 as it appears on the face of the Report.   Mr.

Richardson was not arrested for an out-of-county warrant until the next day. Without any evidence to contradict those facts, or any evidence or instruction to the jury that Mr. Richardson did anything other than sign and submit the Report believing he did so correctly, a reasonable juror could not have found the document false.

### ii.    The Government Did Not Present Sufficient Evidence That the Statement was False When Submitted

The government may have satisfied its burden by presenting evidence that proved beyond a reasonable doubt that the Report was false at the time Mr. Richardson submitted. But, the Government produced no evidence for a jury to find beyond a reasonable doubt that Mr. Richardson mailed or submitted in-person the Monthly Report after he was released from jail, on January 1, 2, or 3, 2013. The government did not show the jury the envelope in which the Report was mailed (which may have shown a date stamp from the post office), ask Ms. Watson to describe mail receipt practices in the U.S. Probation Office, or present a postal expert to opine on the timing of mail in Jacksonville over a federal holiday. Although Mr. Richardson could have theoretically placed it in the mail after he was released from jail on January 1, a federal holiday, or the next day, it is unlikely that it would have reached the Probation Office and been marked received the following day, and it is almost impossible that it was sent and received the same day, January 3. Moreover, the government presented no evidence that it was permissible to submit the form in-person, much less that Mr. Richardson exercised that option.

39

Consequently, the Government has not produced sufficient evidence for a jury to exclude any and every reasonable doubt concerning Mr. Richardson's guilt. *See* Eleventh Circuit Pattern Jury Instruction B3 ("The Government's proof . . . has to exclude 'any reasonable doubt' concerning the Defendant's guilt."). Specifically, the Government has not provided sufficient evidence to exclude the reasonable doubt regarding Mr. Richardson's signature dated December 30, 2012 that appears on the face of his Monthly Report.

In sum, the evidence presented at trial was insufficient as a matter of law to support conviction on Count 21, and the District Court reversibly erred when it denied Mr. Richardson's Motion for Judgment of Acquittal on Counts 10 and 21.

## CONCLUSION

For the foregoing reasons, Mr. Richardson urges this Court to reverse the judgments of the District Court denying Mr. Richardson's Motions to Suppress and Rule 29 Motion for Judgement of Acquittal, and application of an sentencing enhancement per U.S.S.G. § 3C1.1, and to remand this case to the District Court for further proceedings.

Respectfully submitted this the 17th day of January, 2017.

John J. Ossick, Jr.
Georgia Bar Number 555150
JOHN J. OSSICK, JR., P.C.
Post Office Box 1087
Kingsland, Georgia 31548
Telephone:  912-729-5864
Facsimile:  912-729-2230
E-mail: ossick@tds.net

Meredith Jones Kingsley
Georgia Bar Number 793726
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: 404-881-4793
Facsimile: 404-253-8463
E-mail: meredith.kingsley@alston.com

***Counsel    for    Appellant    Aaron    M.
Richardson***

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 9,879 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This 17th day of January, 2017.

John J. Ossick, Jr.
Georgia Bar Number 555150
JOHN J. OSSICK, JR., P.C.
Post Office Box 1087
Kingsland, Georgia 31548
Telephone: 912-729-5864
Facsimile: 912-729-2230
E-mail: ossick@tds.net

Meredith Jones Kingsley
Georgia Bar Number 793726
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: 404-881-4793
Facsimile: 404-253-8463
E-mail: meredith.kingsley@alston.com

*Counsel for Appellant Aaron M. Richardson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within and foregoing Brief of Appellant Aaron M. Richardson was filed and the notice of electronic filing was sent by CM/ECF on January 17, 2017 to:

Arthur Lee Bentley, III
David Paul Rhodes
U.S. Attorney's Office
400 N Tampa Street
Suite 3200
Tampa, Florida 33602-4798

Mark Devereaux
Mac D. Heavener, III
U.S. Attorney's Office
300 N Hogan Street
Suite 700
Jacksonville, Florida 32202-4270

This 17th day of January, 2017.

John J. Ossick, Jr.
Georgia Bar Number 555150
JOHN J. OSSICK, JR., P.C.
Post Office Box 1087
Kingsland, Georgia 31548
Telephone:  912-729-5864
Facsimile:  912-729-2230
E-mail: ossick@tds.net

Meredith Jones Kingsley
Georgia Bar Number 793726
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: 404-881-4793
Facsimile: 404-253-8463
E-mail: meredith.kingsley@alston.com

***Counsel for Appellant Aaron M. Richardson***